IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANK J. CAMBRA,<br><br>    Plaintiff,<br>  v.<br><br>CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION,<br><br>    Defendant                         / | No. C 04-4606 MMC (EMC)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR SUMMARY JUDGMENT; DISMISSING ACTION IN PART WITHOUT PREJUDICE; VACATING HEARING** |

      Before the Court is defendant Chevron International Exploration & Production Company's motion, filed September 1, 2006, for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiff Frank J. Cambra has filed opposition, to which defendant has replied. Having considered the papers filed in support of and in opposition to the motion, the Court deems the matter suitable for decision on the papers, VACATES the hearing scheduled for October 6, 2006, and rules as follows.

**BACKGROUND**

      Plaintiff, a former employee of defendant, alleges he was terminated by defendant in October 2003 "as a result of illegal discrimination based on his association with his wife due to her national origin, Iranian, and her presumed religion, Muslim," (see Amended Complaint ("AC") ¶ 2), and on account of his having engaged in "protected activity" and his age, then 46, (see AC ¶ 24). Further, according to plaintiff, defendant subjected plaintiff to

a hostile work environment, (see AC ¶ 80), breached its employment contract with plaintiff by terminating him without good cause, (see AC ¶¶ 37, 40), slandered plaintiff by stating he was "threatening," (see AC ¶ 50), and invaded plaintiff's "right to privacy" by "forcing him to send his weapons from England to California and to surrender his firearm and shotgun licenses," (see AC ¶ 54). Based on these allegations, plaintiff alleges numerous causes of action, arising under both federal and state law.

## LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure provides that summary judgment as to "all or any part" of a claim "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." See Fed. R. Civ. P. 56(b), (c). Material facts are those that may affect the outcome of the case. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A dispute as to a material fact is "genuine" if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. See id. The Court may not weigh the evidence. See id. at 255. Rather, the nonmoving party's evidence must be believed and "all justifiable inferences must be drawn in [the nonmovant's] favor." See United Steelworkers of Am. v. Phelps Dodge Corp., 865 F.2d 1539, 1542 (9th Cir. 1989) (en banc) (citing Liberty Lobby, 477 U.S. at 255).

The moving party bears the initial responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, interrogatory answers, admissions and affidavits, if any, that it contends demonstrate the absence of a genuine issue of material fact. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party will bear the burden of proof at trial, the moving party's burden is discharged when it shows the court there is an absence of evidence to support the nonmoving party's case. See id. at 325.

A party opposing a properly supported motion for summary judgment "may not rest upon the mere allegations or denials of [that] party's pleading, but . . . must set forth

1. specific facts showing that there is a genuine issue for trial." See Fed. R. Civ. P. 56(e); see
2. also Liberty Lobby, 477 U.S. at 250.  The opposing party need not show the issue will be
3. resolved conclusively in its favor.  See id. at 248-49.  All that is necessary is submission of
4. sufficient evidence to create a material factual dispute, thereby requiring a jury or judge to
5. resolve the parties' differing versions at trial.  See id.

**DISCUSSION**

**A. Discrimination Claims**

    **1. Discrimination on Basis of National Origin and Religion**

In the Tenth Cause of Action, plaintiff alleges his wife was subject to discrimination because of her national origin (Iranian), and, in the Eleventh Cause of Action, plaintiff alleges his wife was subject to discrimination because of her perceived religion (Muslim). Plaintiff asserts such conduct violated his rights under Title VII and the California Fair Employment and Housing Act ("FEHA").

An employment discrimination claim may be based on an adverse employment action taken by a defendant because the plaintiff is married to someone in a protected class.  See Parr v. Woodmen of the World Life Ins. Co., 791 F. 2d 888, 889, 892 (11th Cir. 1986) (holding plaintiff stated claim under Title VII violated where employer refused to hire plaintiff because of race of plaintiff's wife).  Here, plaintiff offers evidence that on various dates in 1998 through 2000 when plaintiff and his family resided in "company housing" in Indonesia, comments were made to plaintiff's wife by other wives who resided in company housing; the comments were perceived by plaintiff's wife to be sarcastic and/or angry in nature and to consist of implicitly negative references to her national origin and/or perceived religion.  (See Caroline Cambra Decl. ¶¶ 11-20.)  As defendant points out, however, plaintiff offers no evidence that such comments were made by employees of defendant, and, in any event, offers no evidence that defendant terminated plaintiff, or otherwise subjected plaintiff to an adverse employment action because defendant harbored an animus towards the national origin or perceived religion of plaintiff's wife.

Accordingly, defendant is entitled to summary judgment on the Tenth and Eleventh

Causes of Actions.

**2. Retaliation on Account of Opposing Activity Protected Under Title VII/FEHA**

In the Twelfth Cause of Action, plaintiff alleges that after he protested to his supervisor about the manner in which his wife was being treated by other wives in company housing, plaintiff was subjected to retaliation, specifically, he received a negative performance evaluation by that supervisor and, several years later, was not selected for open positions by other supervisors. Plaintiff asserts such actions constituted unlawful retaliation in violation of Title VII and FEHA.

An employer may not retaliate against an employee who has "opposed" a practice unlawful under Title VII, see 42 U.S.C. § 2000e-3(a), or FEHA, see Cal. Gov't Code § 12940(h). A retaliation claim may be brought by an employee who has opposed a practice he reasonably believed was discriminatory, even if the conduct is not actually prohibited by Title VII, see Moyo v. Gomez, 40 F. 3d 982, 985 (9th Cir. 1994), or FEHA, see Yanowitz v. L'Oreal, Inc., 36 Cal. 4th 1028, 1043 (2005).

Here, plaintiff offers evidence that he complained to his supervisor in Indonesia about his wife's "mistreatment" and "harassment" by "other wives in the [housing] camp." (See Frank Cambra Decl. ¶ 16). Plaintiff offers no authority, however, to support a finding that an employer can be held liable under Title VII and/or FEHA for comments made to an employee's spouse by non-employees. In any event, plaintiff offers no evidence to support a finding that he reasonably believed the comments directed at his wife by individuals who were not employed by defendant constituted unlawful discrimination by defendant.

Moreover, as defendant argues, to the extent plaintiff asserts the negative performance evaluation constitutes the adverse employment action, the claim is barred by the statute of limitations. The evaluation at issue was given to plaintiff in February 2001, (see id. ¶¶ 31-32, Ex. 14; Connell Decl. Ex. A); plaintiff asserts he did not submit a complaint to the Equal Employment Opportunity Commission ("EEOC") and the Department of Fair Employment and Housing ("DFEH") until December 1, 2003, (see AC ¶ 14). A claim under Title VII, however, is untimely unless presented to the EEOC within

4

300 days of the asserted discriminatory act, see 42 U.S.C. § 2000e-5(e)(1),[1] and is untimely under FEHA unless presented to the DFEH within one year of the act, see Cal. Gov't Code § 12960.

Finally, to the extent the claim is premised on defendant's not selecting plaintiff for various open positions in 2003, plaintiff offers no evidence that any individual having input as to that decisionmaking process was aware of the prior complaint made to the supervisor in Indonesia; thus, plaintiff fails to demonstrate any causal connection between the complaint made in Indonesia and his not being selected for various open positions several years later.[2]  See Raad v. Fairbanks North Star Borough Sch. Dist., 323 F. 3d 1185, 1197 (9th Cir. 2003) (holding plaintiff failed to establish retaliation claim where plaintiff lacked evidence individual who failed to hire plaintiff was aware of plaintiff's prior protected activity).

Accordingly, defendant is entitled to summary judgment on the Twelfth Cause of Action.

**3. Hostile Work Environment**

In the Thirteenth Cause of Action, plaintiff alleges he was subjected to a hostile work environment because of his association with his wife, specifically, because of his wife's national origin and perceived religion.  Plaintiff asserts such conduct violated his rights under Title VII and FEHA.

---

[1] A 300-day period applies if the plaintiff files his complaint with the EEOC after he files a complaint with the DFEH. See id.  If, however, a plaintiff files with the EEOC before he files with the DFEH, he is required to file with the EEOC within 180 days of the alleged discriminatory act. See id.  Here, because plaintiff did not file a claim with the EEOC until more than two and a half years after February 2001, it is immaterial whether he filed his complaint with the EEOC before or after he filed with the DFEH.

[2] Plaintiff also asserts he was subjected to retaliation, while working for defendant in England, on account of his having reported what he believed to be safety violations to defendant. (See, e.g., Frank Cambra Decl. ¶ 74).  Although such assertion may be relevant to plaintiff's state law wrongful termination claim, see, e.g., Green v. Ralee Engineering Co., 19 Cal. 4th 66, 71-73 (1998) (holding plaintiff could proceed on state law wrongful termination claim where plaintiff alleged he was terminated after he reported to management that defendant was manufacturing defective aircraft parts), such assertions are not relevant to plaintiff's Title VII and FEHA claims because Title VII and FEHA address discrimination in the workplace, not workplace safety standards.

"When the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment, Title VII is violated." Harris v. Forklift Systems, Inc., 510 U.S. 17, 21 (1993) (internal quotation and citation omitted); see also Fisher v. San Pedro Peninsula Hospital, 214 Cal. App. 3d 590, 609 (1989) (holding Title VII standard for hostile work environment claim applicable to hostile work environment claim under FEHA).

Here, plaintiff cites no evidence that he was subjected to any "discriminatory intimidation, ridicule, and insult" by defendant. Although plaintiff, in his opposition, asserts that because of "harassment" directed toward his wife, plaintiff was "labeled unfit to work overseas and did not receive a pay increase," (see Pl.'s Amended Mem. of P. & A. in Opp. To Def.'s Mot. For Summ. J. at 9:2-3), plaintiff fails to cite any evidence to support such assertions. Indeed, plaintiff's employment records indicate he received merit pay increases in 2001 and 2002. (See Supp. Young Decl. ¶ 2, Ex. A.) Further, in September 2000, plaintiff requested that his "next job with [defendant]" be "overseas" and stated he was "particularly interested" in a position in England, (see Frank Cambra Dep. Ex. 27);[3] it is undisputed that plaintiff thereafter received and accepted an offer to work for defendant in an overseas position in England, a position where he remained for more than two years, (see Frank Cambra Decl. ¶¶ 25, 28, 73).

Accordingly, defendant is entitled to summary judgment on the Thirteenth Cause of Action.

**4. Discrimination on Basis of Age**

In the Fourteenth Cause of Action, plaintiff alleges that defendant, because of discrimination based on plaintiff's age of 46, did not select him for six positions to which he applied in or before October 2003, or for other positions to which he had been "nominated," and, instead, "forced [plaintiff] to take early retirement on October 31, 2003." (See AC

---

[3] Excerpts from the deposition of Frank Cambra are attached as Exhibit A to the Declaration of Michele Ballard, filed September 1, 2006.

1 ¶¶ 22 - 24.)  Plaintiff asserts such conduct violated his rights under the Age Discrimination
2 in Employment Act ("ADEA") and FEHA.

3 Plaintiff does not argue he can establish his age discrimination claim by direct
4 evidence of a discriminatory motive.  Rather, he relies on the burden-shifting approach set
5 forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), whereby the plaintiff first
6 must establish a prima facie case; if the plaintiff does so, the defendant must proffer a
7 legitimate reason for the termination; and if the defendant does so, the plaintiff is required
8 to show the defendant's proffered reason is pretextual, see id. at 802-04; see also Nidds v.
9 Schindler Elevator Corp., 113 F. 3d 912, 917 (9th Cir. 2006) (applying "shifting burdens"
10 approach to age discrimination claim).  "To establish a prima facie case of age
11 discrimination through circumstantial evidence, the plaintiff must show that he was: (1) a
12 member of a protected class [age 40-70]; (2) performing his job in a satisfactory manner;
13 (3) discharged; and (4) replaced by a substantially younger employee with equal or inferior
14 qualifications."  Id. at 917.  Because plaintiff's claim pertains to defendant's failure to hire
15 for open positions, the third and fourth elements can be satisfied by a showing defendant
16 selected, instead of plaintiff, a substantially younger employee with equal or inferior
17 qualifications, see, e.g., McGinest v. GTE Service Corp., 360 F. 3d 1103, 1122-23 (2004)
18 (holding plaintiff stated prima facie case of race discrimination where plaintiff was qualified
19 for open position and defendant instead hired person of different race), or that defendant
20 did not select plaintiff and "continued to seek applicants from persons of [plaintiff's]
21 qualifications," see McDonnell Douglas, 411 U.S. at 802.

22 Plaintiff alleges he unsuccessfully applied for six positions, which positions were
23 identified during discovery.  (See Hamasaki Decl. Exs. I, J.)  Defendant has offered
24 undisputed evidence that two of those positions were filled by persons who were,
25 respectively, 47 and 44 years of age, (see Young Decl. ¶ 9), i.e., persons who were not
26 substantially younger than 46.  See, e.g., Munoz v. St. Mary-Corwin Hosp., 221 F. 3d 1160,
27 1166 (10th Cir. 2000) (holding "because plaintiff's replacement was only two years his
28 junior – an obviously insignificant difference – the necessary inference of discrimination

7

1  was precluded, and he failed to establish his prima facie case"). Defendant also offers
2  evidence that no one was selected for the remaining four positions. (See Young Decl. ¶ 9.)
3  Plaintiff, again, offers no evidence to the contrary, and, further, offers no evidence that
4  defendant held the unfilled positions open and continued to accept applications.[4]
5  Consequently, plaintiff has not offered sufficient evidence to establish a prima facie case of
6  age discrimination as to those six positions identified by plaintiff in discovery.

7  In his opposition, plaintiff identifies three additional positions for which he was
8  considered by defendant in October 2003.[5] Plaintiff's evidence, however, shows that two of
9  these additional positions were not filled, (see Frank Cambra Decl. Exs. 56, 57), and
10 plaintiff offers no evidence to show defendant held either such position open and continued
11 to accept applications therefor. Consequently, plaintiff has not established a prima facie
12 case as to these two additionally-identified positions. As to the remaining position, plaintiff
13 offers evidence that defendant selected Will Bradford ("Bradford"), (see id. Ex. 54), but
14 offers no admissible evidence that Bradford was, as plaintiff asserts, 35 years old.[6]
15 Consequently, plaintiff has not established a prima facie case as the third additionally-
16 identified position.

17 Assuming, arguendo, plaintiff has shown Bradford was substantially younger than
18 plaintiff, plaintiff's age discrimination claim nonetheless fails. The proffered reason why

---

[4] Although plaintiff asserts he is "informed and believe[s]" that one unfilled position, specifically Position No. 50077182/SA-03-17, was "actually filled shortly after October 31, 2003," (see Frank Cambra Decl. ¶ 146), plaintiff offers no evidence to support such assertion.

[5] Defendant contends plaintiff's Fourteenth Cause of Action should be limited to his allegation that he applied for six positions. (See AC 22.) Plaintiff also alleges, however, that he was told he was "nominated" for other positions, (see id.), and defendant concedes it considered plaintiff for other positions, (see Young Decl. ¶ 8 (stating plaintiff "posted for six positions . . . and was considered for several other positions for which he did not apply)). Defendant fails to show that plaintiff, in an answer to an interrogatory or otherwise, limited the scope of his age discrimination claim to the six positions for which he applied.

[6] Plaintiff offers a copy of a typewritten document produced by defendant in the course of discovery, (see id.); on one page of that document, a handwritten note indicates Bradford's birthdate is July 12, 1968, (see id., 23rd page). Because there is no showing as to who wrote that note or the source of such information, defendant's objection to such evidence on the ground of lack of foundation is sustained.

8

defendant did not select plaintiff is that plaintiff did not meet the selection criteria, specifically, plaintiff did not demonstrate proficiency as to the requisite skill identified by defendant as "Chevron Texaco Way Behavior." (See id.) In that respect, defendant offers evidence that in early 2003, defendant's supervisors, in connection with their annual meeting to compare employees and rank each employee's performance for the prior year, received "disturbing" feedback from individuals who had worked with plaintiff during 2002. (See Gael Decl. ¶ 4; see also Connell Decl. ¶ 13, Ex. C.) Specifically, "many voiced concern about [plaintiff's] interpersonal skills and the intractable, overly conservative positions he took on various construction projects, which led to workplace tension, project delays and cost overruns." (See id.) After receiving this information, the supervisors rated plaintiff "C3," the lowest possible rating. (See Gael Decl. ¶ 6.)[7] Plaintiff does not assert such rating, if accurate, would not constitute a legitimate, non-discriminatory basis for his non-selection. Rather, plaintiff asserts, defendant's rating of plaintiff's skills was "false." (See Frank Cambra Decl. ¶ 140.)

In that regard, plaintiff challenges the motivation of at least some of the individuals who in 2003 made negative comments about his work to his supervisors, arguing such individuals were "likely complaining about [plaintiff] since [plaintiff's] safety evaluations were creating work for them," (see id. ¶ 70); plaintiff similarly challenges the motives of the supervisors who rated him in 2003, asserting they were concerned that his "safety

---

[7]Defendant also offers evidence that in "early 2003," defendant assigned a "behavioral coach" to plaintiff to "help [plaintiff] understand the feedback that [defendant's] management was getting from his peers and to provide clear feedback to [plaintiff] to permit him an opportunity to improve his performance," (see Jordan Decl. ¶ 2), and that the coach later concluded plaintiff was "either unable or unwilling to change his behaviors to the satisfaction of his supervisors and project management." (See id.) Additionally, defendant offers evidence that in July 2003, plaintiff's supervisor "collected information from various individuals about their interactions with [plaintiff] and about their willingness to work with him in the future," (see Connell Decl. ¶ 16), and that some of those individuals identified what they perceived to be problems caused by plaintiff, including plaintiff's assertedly recommending designs that added "significant cost and schedule to the job without discernible project benefit," (see id. Ex. E, first page), as well as plaintiff's having "sown misinformation," (see id.), needing "a huge amount of babysitting," (see id. Ex. E, fourth page), and expressing an "excessive" level of concern for issues he had raised, (see id. Ex. E, ninth page).

9

evaluations were costing [defendant] money," (see id.).[8]  If, as plaintiff appears to argue, he was not selected because he raised safety concerns, such motivation is immaterial to a claim of discrimination based on age.

Plaintiff also relies on evidence that in May 2002, he received a "360 Report," in which his skills in a number of areas were ranked by two supervisors and a number of his peers, (see id. Ex. 32); according to plaintiff, his supervisor Gordon Fosty ("Fosty") advised plaintiff that plaintiff's "overall score" in that report was "within the top quartile," (see id. ¶ 67).[9]  In its moving papers, however, defendant offers evidence, which plaintiff has not disputed, that the purpose of a "360 Report" is to provide an employee with "an opportunity to obtain feedback from peers of their choosing, with the hope that the employee at issue may then alter or improve his or her performance and/or behaviors in response to such feedback," (see Young Decl. ¶ 14), and that defendant does not rely on the rankings in such reports when it evaluates work performance because "the employee can control the outcome of the reports by strategically selecting 'raters,'" (see id.).

Finally, plaintiff relies on his own opinion that he deserved higher ratings from defendant.  Plaintiff's subjective opinion as to his skills, however, is insufficient to demonstrate pretext.  See Schuler v. Chronicle Broadcasting Co., 793 F. 2d 1010, 1011 (9th Cir. 1986) (holding plaintiff's "subjective personal judgments" as to job skills insufficient to raise genuine issue of material fact as to pretext).

In sum, plaintiff has not offered sufficient evidence that, if accepted, would

---

[8] In a similar vein, plaintiff argues pretext is demonstrated because plaintiff had unsuccessfully attempted to bring a number of "safety concerns" to the attention of a supervisor, Fred Van Etten ("Van Etten"), one of the individuals who decided not to hire plaintiff for the open positions.  (See Pl.'s Amended Mem. of P. & A. in Opp. to Def.'s Mot. for Summ. J. at 16:4-8; see also Frank Cambra Decl. ¶¶ 74-84 (setting forth workplace safety concerns plaintiff brought to Van Etten's attention).)

[9] The report also reflects, however, Fosty's evaluation that plaintiff failed to meet defendant's objectives as to a number of the qualities surveyed, specifically, "maximizes the use of available resources (people, time, money, equipment)," "accepts personal responsibility for own actions and results," "actively listens in order to understand the viewpoints of others," "reinforces behaviors needed for successful change," "creates an environment where people are comfortable speaking freely," and "commits time and energy to developing leadership skills in others."  (See id. Ex. 32.)

1  demonstrate defendant's ratings of plaintiff's skills were false and a pretext for age
2  discrimination.  See Bradley v. Harcourt, Brace and Co., 104 F. 3d 267, 270 (9th Cir. 1996)
3  (holding plaintiff must offer "specific, substantial evidence of pretext" to establish triable
4  issue of fact).

5  Accordingly, defendant is entitled to summary judgment on the Fourteenth Cause of
6  Action.

**B.  Non-Discrimination Claims**

8  The Court's jurisdiction over the instant action is based on the existence of a federal
9  question.  (See AC ¶ 4.)  As a result of the Court's findings as set forth above, plaintiff's
10 discriminatory claims, which include all of his federal claims, have been resolved.  The
11 Court's jurisdiction over the remaining state law claims is supplemental in nature.  See 28
12 U.S.C. § 1367(a).

13 A district court may decline to exercise supplemental jurisdiction where "the district
14 court has dismissed all claims over which it has original jurisdiction."  See 28 U.S.C.
15 § 1367(c)(3).  Where a district court has granted summary judgment on each federal claim
16 in an action, the district court, pursuant to § 1367(c)(3), may properly decline to exercise
17 supplemental jurisdiction over any remaining state law claims.  See Bryant v. Adventist
18 Health System/West, 289 F. 3d 1162, 1169 (9th Cir. 2002).

19 The Court will decline to exercise supplemental jurisdiction over the remaining state
20 law claims.

## CONCLUSION

22 For the reasons stated above, defendant's motion for summary judgment is hereby
23 GRANTED in part and DENIED in part as follows, and the action is DISMISSED in part, as
24 follows:

25 1. Defendant is entitled to summary judgment on the Tenth through Fourteenth
26 Causes of Action.

27 //
28 //

11

2.  The First through Ninth Causes of Action as well as the Fifteenth and Sixteenth Causes of Action are hereby DISMISSED without prejudice.

**IT IS SO ORDERED**.

Dated: October 4, 2006

_____
MAXINE M. CHESNEY
United States District Judge